**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTH COAST MEDICAL, INC., a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:26-cv-1851 |
| v. | ) ) | |
| PERFORMANCE HEALTH SUPPLY, INC., a Delaware corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant | ) ) | |

**COMPLAINT**

Plaintiff North Coast Medical, Inc. ("NCM" or "Plaintiff"), by and through undersigned counsel, hereby brings this Complaint against Defendant Performance Health Supply, Inc. ("Performance Health" or "Defendant"), and in support thereof alleges as follows:

**INTRODUCTION**

1. This action arises from Performance Health's conduct in connection with its advertising, marketing, and commercial promotion of orthopedic splinting products through its website, catalogs, Group Purchasing Organization ("GPO") contract systems, and other advertising channels. This conduct includes copyright infringement, trademark infringement, false advertising, misappropriation of NCM's published advertising content, and related unfair competition.

2.  NCM is the owner of the federally registered Comfort Cool® trademark, both of which have been used continuously in commerce in connection with orthopedic splinting products for many years. NCM has also developed substantial published advertising content, including customer reviews and product descriptions, in connection with its Comfort Cool® products.

3.  Performance Health has, through its advertising and promotional activities: (a) configured its website search functionality to use NCM's COMFORT COOL® trademark to promote and sell both authentic Comfort Cool® products manufactured by NCM and non-Comfort Cool® competing products not manufactured by NCM, displaying them together in a manner that leads consumers to believe that all products in the search results are NCM-manufactured products; (b) displayed NCM's copyrighted photographs of genuine Comfort Cool® products, as well as photographs that are substantially similar to copyrighted photographs of genuine Comfort Cool® products, alongside and in connection with competing non-NCM products in search results and product listings; (c) introduced competing products and advertised them under the legacy item numbers historically associated with genuine Comfort Cool® products in GPO contract catalogs and electronic ordering systems; (d) reassigned genuine Comfort Cool® products to new item numbers in its advertising materials; and (e) published and displayed in its advertising customer reviews originally written for genuine Comfort Cool® products on product pages advertising Performance Health's competing products.

4. NCM repeatedly raised its trademark concerns with Performance Health over a period of weeks beginning in January 2026. Despite NCM's detailed written demands for corrective action, including restoration of legacy item numbers to genuine Comfort Cool® products and modification of website search functionality to exclude competing products from Comfort Cool® trademark searches, Performance Health refused to comply.

5. On February 9, 2026, Performance Health expressly stated that it "will not be changing any item numbers back to legacy numbers" and claimed it did not "see how the item numbers and web searches are creating confusion for customers."

6. NCM brings this action to obtain injunctive relief and damages arising from Performance Health's copyright infringement and advertising and promotional conduct.

## THE PARTIES

7. Plaintiff North Coast Medical, Inc. is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Morgan Hill, California. NCM has been engaged in the business of designing, manufacturing, marketing, and distributing high-quality orthopedic splinting, rehabilitation, and therapy products for over four decades. NCM's products are sold throughout the United States and internationally under well-known trademarks including Comfort Cool®, Norco®, and Touch-Test®.

8. Defendant Performance Health Supply, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1245 Home Avenue, Akron, Ohio 44310, and significant operations in Warrenville, Illinois. Performance Health is one of the largest distributors of rehabilitation products and supplies in the United States, holding contracts with major GPOs including Premier, Inc. and Vizient, Inc., through which thousands of hospitals and healthcare facilities purchase products.

9. Performance Health is a portfolio company of Madison Dearborn Partners, LLC, a private equity firm headquartered in Chicago, Illinois.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over Plaintiff's federal copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the copyright laws of the United States, specifically the Copyright Act, 17 U.S.C. § 101 *et seq*.

11. This Court has original subject matter jurisdiction over Plaintiff's federal trademark claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the federal trademark laws of the United States, specifically the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act").

12. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has personal jurisdiction over Defendant Performance Health. Defendant transacts substantial and continuous business in the State of Illinois, maintains significant operations in this District, has committed tortious acts in this District giving rise to this action, and has purposefully availed itself of the privilege of conducting business in Illinois, thereby invoking the benefits and protections of Illinois law. This Court's exercise of personal jurisdiction over Defendant comports with the Illinois long-arm statute, 735 ILCS 5/2-209, and with constitutional due process requirements.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c), and 28 U.S.C. § 1400(a). A substantial part of the events or omissions giving rise to the claims occurred in this District, Defendant conducts substantial business in this District, and Defendant may be found in this District.

## FACTUAL ALLEGATIONS

### I. NCM's Copyrighted Photographs

15. NCM owns original photographs depicting its Comfort Cool® products (the "Copyrighted Photographs"), including the Comfort Cool® Thumb CMC Restriction Splint, Comfort Cool® Thumb CMC Abduction Splint, Comfort Cool® Wrist & Thumb CMC Restriction Splint, and Comfort Cool® Ulnar Booster Splint.

16. NCM is the sole owner of all exclusive rights in the Copyrighted Photographs pursuant to 17 U.S.C. § 106, and has not authorized Performance Health to reproduce, display, or distribute the Copyrighted Photographs in connection with any products other than genuine NCM Comfort Cool® products.

## II. NCM's Trademarks, Products, and Goodwill

17. NCM owns the COMFORT COOL® trademark, U.S. Trademark Registration No. 7093656, used continuously in interstate commerce since March 31, 1999. A true and correct copy of the trademark registration certificate is attached hereto as **Exhibit A**. The mark is inherently distinctive and has acquired substantial secondary meaning through decades of use and millions of dollars in marketing investment.

18. NCM's Comfort Cool® product line includes the Comfort Cool® Thumb CMC Restriction Splint (NCM's flagship product), Comfort Cool® Thumb CMC Abduction Splint, Comfort Cool® Wrist & Thumb CMC Restriction Splint, and Comfort Cool® Ulnar Booster Splint.

19. NCM's Comfort Cool® products have been distributed through Performance Health for many years under specific item numbers that have become associated with genuine Comfort Cool® products in the minds of healthcare purchasers. The item numbers are akin to slogans that have acquired secondary meaning.

### III. The GPO Distribution Channel and Item Number Significance

20. Performance Health holds contracts with the two largest Group Purchasing Organizations ("GPOs") in the United States: Premier, Inc. and Vizient, Inc. These contracts utilize tiered pricing structures requiring hospitals to commit to purchasing 75% to 90% or more of their rehabilitation product needs from Performance Health's catalog to access lower pricing, effectively locking hospitals into Performance Health's catalog.

21. Within this GPO framework, item numbers function as critical product identifiers. Hospital purchasing systems, inventory management software, and reordering workflows are built around item numbers. Purchasers who reorder using a familiar item number reasonably expect to receive the same product historically associated with that number.

22. Routine reorders are placed weekly or monthly by departmental end users or rehab personnel through hospital MMIS (Materials Management Information Systems) or ERP systems. Approved items are saved MMIS in item master templates, favorites, or reorder lists to streamline purchasing and ensure GPO compliance. Once an item is embedded under a specific item number, reorders are placed by selecting that number, with pricing, vendor, and compliance already established. These systems are designed for efficiency and contract adherence, not for repeated brand or product comparison. As a result, users reasonably rely on legacy item numbers continuing to correspond to the same products historically associated with them.

**IV. NCM's Legacy Item Numbers on GPO Contracts**

23. NCM's Comfort Cool® products have been carried on Premier and Vizient GPO contracts under the following legacy item numbers:

a. **Comfort Cool Thumb CMC Restriction Splint:**

- Item No. 92720501 (COMFORT COOL THUMB CMC RGHT SM)

- Item No. 92720502 (COMFORT COOL THUMB CMC LFT SM)

- Item No. 92720503 (COMFORT COOL THUMB CMC RGHT MED)

- Item No. 92720504 (COMFORT COOL THUMB CMC LFT MED)

- Item No. 92720505 (COMFORT COOL THUMB CMC RGHT LG)

- Item No. 92720506 (COMFORT COOL THUMB CMC LFT LG)

b. **Comfort Cool Thumb CMC Abduction Splint:**

- Item No. 56097901 (COMFORT COOL CMC ABD LFT TODDLER)

- Item No. 56097902 (COMFORT COOL CMC ABD LEFT YOUTH)

- Item No. 56097903 (COMFORT COOL CMC ABD LEFT SM)

- Item No. 56097904 (COMFORT COOL CMC ABD LEFT MED)

- Item No. 56097905 (COMFORT COOL CMC ABD LEFT LG)

- Item No. 56097906 (COMFORT COOL CMC ABD RGHT TODDLER)

- Item No. 56097907 (COMFORT COOL CMC ABD RGHT YOUTH)

- Item No. 56097908 (COMFORT COOL CMC ABD RGHT SM)

- Item No. 56097909 (COMFORT COOL CMC ABD RGHT MED)

- Item No. 56097910 (COMFORT COOL CMC ABD RGHT LG)

c. **Comfort Cool Wrist & Thumb CMC Restriction Splint:**

- Item No. 55049401 (COMFORT COOL WRIST/THUMB CMC L SM)

- Item No. 55049402 (COMFORT COOL WRIST/THUMB CMC L MED)

- Item No. 55049403 (COMFORT COOL WRIST/THUMB CMC L LG)

- Item No. 55049404 (COMFORT COOL WRIST/THUMB CMC R SM)

- Item No. 55049405 (COMFORT COOL WRIST/THUMB CMC R MED)

- Item No. 55049406 (COMFORT COOL WRIST/THUMB CMC R LG)

- Item No. 55049407 (COMFORT COOL WRIST/THUMB CMC LFT XL)

- Item No. 55049408 (COMFORT COOL WRIST/THUMB CMC R XL)

d. **Comfort Cool Ulnar Booster Splint:**

- Item No. 7101329 (COMFORT COOL ULNAR BOOSTER SPLINT L, S)

- Item No. 7101330 (COMFORT COOL ULNAR BOOSTER SPLINT R, S)

- Item No. 7101331 (COMFORT COOL ULNAR BOOSTER SPLINT L, M)

- Item No. 7101332 (COMFORT COOL ULNAR BOOSTER SPLINT R, M)

- Item No. 7101333 (COMFORT COOL ULNAR BOOSTER SPLINT L, L)

- Item No. 7101334 (COMFORT COOL ULNAR BOOSTER SPLINT R, L)

24. These item numbers have been embedded in hospital purchasing systems and procurement workflows throughout the United States, and purchasers reasonably associate them with NCM's Comfort Cool® brand.

**V. Performance Health's Scheme to Misappropriate NCM's Brand Identity**

**A. Unauthorized Use of the COMFORT COOL® Trademark in Website Search**

25. Performance Health has configured its website search functionality to return both genuine NCM Comfort Cool® products and non-NCM competing products (such as "Thumb CMC Restriction Splint - CMC Brace") when users search for "Comfort Cool." These products are displayed together without differentiation, accompanied by photographs depicting genuine Comfort Cool® products, or substantially similar photographs, creating the false impression that all products displayed are NCM-manufactured.

26. This conduct causes consumer confusion by: (a) leading purchasers to believe Performance Health's competing products are Comfort Cool® products; and (b) trading on the goodwill of the Comfort Cool® brand.

27. Screenshots from Performance Health's website showing these mixed search results are attached hereto as **Exhibit B**.

**B. Unauthorized Reproduction and Display of NCM's Copyrighted Photographs**

28. Performance Health has, without authorization, reproduced and displayed NCM's Copyrighted Photographs, and substantially similar photographs, next to listings for non-NCM competing products such as "Thumb CMC Restriction Splint - CMC Brace," creating the false impression that all products shown are genuine Comfort Cool® products. Performance Health has also displayed the Copyrighted Photographs, and substantially similar photographs, on product pages for its competing products.

29. Screenshots showing Performance Health's unauthorized use of NCM's Copyrighted Photographs are attached hereto as **Exhibit C**.

30. Performance Health's copyright infringement has been willful. Performance Health knew the Copyrighted Photographs were owned by NCM and had no authorization to use them in connection with competing products or make substantially similar infringing photographs.

### C. Introduction of Competing Products Under Legacy Item Numbers and Dual Listing Scheme

31. Beginning in late 2025, Performance Health began marketing competing products under the legacy item numbers historically associated with genuine Comfort Cool® products. Specifically:

   a. Performance Health created a de-branded listing titled "Thumb CMC Restriction Splint - CMC Brace" (item #081235050) at https://www.performancehealth.com/thumb-cmc-restriction-splint, while simultaneously maintaining a branded listing titled "Comfort Cool® Thumb CMC Restriction Splint" (item #7034888) at https://www.performancehealth.com/Comfort Cool-thumb-cmc-restriction-splints;

   b. Performance Health de-branded the Comfort Cool® Wrist & Thumb CMC Restriction Splint, listing it as "Wrist & Thumb CMC Restriction Splint" (item #081048313) at https://www.performancehealth.com/wrist-thumb-cmc-restriction-splint; and

c.   Performance Health selectively retained NCM's trademarks on certain products (Comfort Cool Ulnar Booster Splint, Touch-Test Two-Point Discriminator) while removing trademarks from NCM's flagship CMC Restriction Splint products, demonstrating intentional de-branding.

32. As documented in **Exhibit C**, this dual-listing scheme enables Performance Health to capture orders intended for genuine Comfort Cool® products while claiming it still offers NCM's products.

**D. Misappropriation of Advertising Content**

33. Performance Health has published customer reviews originally written for genuine NCM Comfort Cool® products on product pages advertising Performance Health's competing "Thumb CMC Restriction Splint - CMC Brace" products (item #081235050). These reviews were written by customers who purchased genuine Comfort Cool® products and constitute NCM's advertising content.  See **Exhibit D.**

**VI. NCM's Demands for Correction and Performance Health's Refusal to Comply**

34. On January 3, 2026, NCM's CEO Mark Biehl wrote to Performance Health documenting removal of Comfort Cool® branding, providing secret shopper evidence (August 2025 vs. January 2026 receipts), and demanding restoration of trademark attribution.

35. On January 13, 2026, Performance Health's Greg Nulty acknowledged the issue, stating: "The overarching issue is that we don't have a contract with you guys so all our efforts are in good faith."

36. On January 14, 2026, NCM expanded concerns to three marks (Comfort Cool®, Norco®, Touch-Test®) and placed Performance Health's account on hold.

37. On January 24, 2026, NCM transmitted a draft Distribution Agreement to Performance Health.

38. On February 4, 2026, Performance Health claimed it had corrected the website issues.

39. On February 5, 2026, NCM documented that Performance Health's changes had worsened the problem by creating dual listings with new item numbers for branded products while legacy numbers remained associated with de-branded competing products.

40. On February 9, 2026, Performance Health refused to comply, stating: "we will not be changing any item numbers back to legacy numbers nor do we believe this has IP issues" and "I do not see how the item numbers and web searches are creating confusion for customers."

**VII. Performance Health's Pattern of Manufacturer Circumvention**

41. NCM has documented two incidents of attempted manufacturer circumvention:

a. **April 2023:** An individual contacted NCM's compression glove manufacturer (HX Company, China) seeking confidential product information and factory access. The manufacturer refused and notified NCM. In November 2024, a similar product appeared in the market, allegedly produced for "a large Medical company."

b. **September 2025:** A visitor to NCM's CMC product manufacturer (SAVA, China) requested quotes for 50,000 CMC units and brought product samples identified as copies of NCM's Comfort Cool® line. The manufacturer refused all requests and notified NCM.

42. On January 3, 2026, NCM confronted Performance Health: "we have confirmed reports from our contracted manufacturer that Performance Health requested a quote for 50,000 mixed sizes of the Comfort Cool CMC Restriction Splint, while annual volume is approximately 75,000 mixed sizes."

## VIII. Performance Health's Relabeling Capabilities

43. Upon information and belief, Performance Health's Indiana distribution center includes capabilities to relabel and repackage products after receipt from suppliers, creating a risk that NCM-branded products may be altered.

## IX. Harm to NCM

44. Performance Health's conduct has caused ongoing harm to NCM, including: copyright infringement damages; trademark infringement through mixed search results causing consumer confusion; loss of brand control; reputation damage; loss of goodwill; customer confusion; and lost sales to purchasers who received competing products instead of genuine Comfort Cool® products.

45. These practices materially affect revenue, gross margin, and overall financial performance. Performance Health's refusal to restore legacy item numbers and branding after repeated notice happened at the senior management level and involved systems central to the company's financial results. Upon information and belief, this conduct was known to, or reasonably should have been known to, the board and ownership representatives exercising oversight of the business.

46. These harms will continue unless Performance Health is enjoined.

### CLAIMS FOR RELIEF

### COUNT I
### Federal Copyright Infringement Under 17 U.S.C. § 501

47. Plaintiff incorporates by reference and realleges paragraphs 1 through 46 as if fully set forth herein.

48. NCM is the owner of valid copyrights in the Copyrighted Photographs.

49. The Copyrighted Photographs are original works of authorship that are entitled to copyright protection under 17 U.S.C. § 102.

50. NCM owns the exclusive rights to reproduce, distribute, publicly display, and prepare derivative works of the Copyrighted Photographs pursuant to 17 U.S.C. § 106.

51. Performance Health has infringed, and continues to infringe, NCM's copyrights in the Copyrighted Photographs by reproducing, publicly displaying, and distributing the Copyrighted Photographs in its advertising, on its website, and in its promotional materials, without NCM's authorization, including:

a. Displaying the Copyrighted Photographs depicting genuine Comfort Cool® products next to, alongside, and interspersed with non-NCM competing products in search results when users search for "Comfort Cool" on Performance Health's website, creating the false impression that all products shown are NCM-manufactured;

b. Displaying substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products next to, alongside, and interspersed with non-NCM competing products in search results when users search for "Comfort Cool" on Performance Health's website, creating the false impression that all products shown are NCM-manufactured;

c. Reproducing and displaying the Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products on product pages and in advertising materials for Performance Health's competing "Thumb CMC Restriction Splint - CMC Brace" products (item #081235050); and

d. Distributing the Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products through Performance Health's website and other advertising channels in connection with Performance Health's competing products.

52. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalogs.

53. Performance Health's reproduction, public display, and distribution of the Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in its advertising for competing products, and in search results designed to mix genuine and non-genuine products, constitutes infringement of NCM's exclusive rights under 17 U.S.C. § 106(1), (3), and (5).

54. Performance Health's acts of copyright infringement have been willful.

55. Performance Health knew or should have known that the Copyrighted Photographs were owned by NCM, that NCM had not authorized Performance Health to use the Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in connection with competing products, and that Performance Health's use of the photographs in advertising for competing products and in mixed search results would mislead purchasers into believing all products shown are NCM products. Performance Health intentionally used

NCM's Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in its advertising and search functionality to trade on NCM's creative works and deceive purchasers searching for genuine Comfort Cool® products.

56. As a direct and proximate result of Performance Health's copyright infringement, NCM has suffered and continues to suffer damages, including actual damages and Performance Health's profits attributable to the infringement.

## COUNT II
## Federal Trademark Infringement Under 15 U.S.C. § 1114

57. Plaintiff incorporates by reference and realleges paragraphs 1 through 56 as if fully set forth herein.

58. NCM is the owner of valid and legally protectable trademark rights in the COMFORT COOL® mark, which is registered on the Principal Register of the United States Patent and Trademark Office.

59. NCM's COMFORT COOL® mark is inherently distinctive and has acquired strong secondary meaning through NCM's decades of continuous and exclusive use in commerce.

60. Performance Health has used, and continues to use, in interstate commerce, in its advertising and promotional activities, NCM's COMFORT COOL® trademark, and designations, identifiers, and commercial indicia confusingly similar thereto, in connection with the marketing and sale of orthopedic splinting products not manufactured by or authorized by NCM.

61. Specifically, Performance Health has infringed NCM's trademark rights by:

   a. **Using the COMFORT COOL® trademark in website search functionality to promote both authentic and non-authentic products together in advertisements broadcast or published to the general public:** When users search for "Comfort Cool" on Performance Health's website, Performance Health returns search results displaying both genuine NCM Comfort Cool® products and non-NCM competing products such as "Thumb CMC Restriction Splint - CMC Brace" (item #081235050), mixed together without clear differentiation, thereby using NCM's trademark without authorization to create the false impression that all products displayed are NCM-manufactured Comfort Cool® products;

   b. **Displaying photographs of genuine Comfort Cool® products alongside non-NCM competing products in advertisements broadcast or published to the general public:** In the search results triggered by the COMFORT COOL® trademark, Performance Health displays NCM's Copyrighted Photographs depicting genuine Comfort Cool® products next to, alongside, and interspersed with listings for non-NCM competing products, reinforcing the false impression that all products in

the search results are part of the Comfort Cool® product line and are manufactured by NCM;

c. **Using legacy item numbers historically associated with Comfort Cool® products to market competing products advertisements broadcast or published to the general public:** Performance Health has assigned legacy Comfort Cool® item numbers to its competing products in its advertising, GPO pricing files, and other promotional materials; and

d. **Creating a dual-listing scheme to capture orders and misappropriate brand equity advertisements broadcast or published to the general public:** Performance Health has created two separate product listings for the Comfort Cool Thumb CMC Restriction Splint: a de-branded listing titled "Thumb CMC Restriction Splint - CMC Brace" (item #081235050) at https://www.performancehealth.com/thumb-cmc-restriction-splint, and a branded listing titled "Comfort Cool® Thumb CMC Restriction Splint" (item #7034888) at https://www.performancehealth.com/Comfort Cool-thumb-cmc-restriction-splints. This dual-listing scheme enables Performance Health to capture orders intended for genuine Comfort Cool® products while maintaining plausible deniability.

62. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalogs.

63. Performance Health's conduct creates a likelihood of confusion under the factors articulated by the Seventh Circuit, including:

a. **Strength of the Mark:** The COMFORT COOL® mark is distinctive and has acquired strong secondary meaning through decades of use.

b. **Similarity of Marks/Designations:** Performance Health is using NCM's exact trademark in its search functionality to return both genuine and non-genuine products, and is using the identical legacy item numbers historically associated with Comfort Cool® products.

c. **Similarity of Products:** Performance Health's competing products are designed to be similar to NCM's Comfort Cool® products in function, appearance, and specifications.

d. **Area and Manner of Concurrent Use:** Both products are marketed and sold through the same website and GPO distribution channels to the same healthcare purchasers, and are displayed together in search results triggered by the Comfort Cool® trademark.

e. **Degree of Care Exercised by Purchasers:** While healthcare purchasers may exercise care in product selection, Performance Health's display of genuine and non-genuine products together in Comfort Cool® search results exploits purchasers' reasonable expectation that a brand search will return only products of that brand.

f. **Defendant's Intent:** Performance Health's configuration of its search functionality to return both genuine and non-genuine products in response to searches for "Comfort Cool," its display of these products together without clear differentiation, and its creation of a dual-listing scheme with separate item numbers for branded and de-branded versions of the same product, demonstrates intent to cause confusion and trade on NCM's trademark and goodwill. Performance Health's intent is further demonstrated by its February 9, 2026 refusal to correct the website search functionality despite NCM's repeated demands, stating it did not "see how the item numbers and web searches are creating confusion for customers." Performance Health's selective retention of NCM's

trademarks on certain products (such as the Comfort Cool Ulnar Booster Splint and Touch-Test Two-Point Discriminator) while removing trademarks from NCM's flagship CMC Restriction Splint products further demonstrates that the de-branding is intentional and deliberate.

g. **Actual Confusion:** Upon information and belief, actual confusion has occurred among purchasers who search for Comfort Cool® products on Performance Health's website and believe that all products displayed in the search results are genuine NCM-manufactured Comfort Cool® products.

64. Performance Health's acts of trademark infringement, conducted through its advertising, promotional activities, and website search functionality, have been willful. NCM provided Performance Health with repeated written notice of the trademark issues beginning January 3, 2026, and Performance Health expressly refused to comply with NCM's demands for corrective action on February 9, 2026.

65. As a direct and proximate result of Performance Health's trademark infringement, NCM has suffered and continues to suffer injury, including loss of goodwill, damage to brand reputation, loss of sales, and diversion of purchasers to competing products.

66. NCM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, damages pursuant to 15 U.S.C. § 1117(a) including Performance Health's profits, NCM's actual damages, and costs of the action, enhanced damages for willful infringement, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) as this is an exceptional case.

## COUNT III
## False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A)

67. Plaintiff incorporates by reference and realleges paragraphs 1 through 66 as if fully set forth herein.

68. Performance Health has used, and continues to use, in interstate commerce, in connection with goods, false designations of origin and false or misleading descriptions and representations of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Performance Health with NCM, and as to the origin, sponsorship, or approval of Performance Health's goods by NCM.

69. Specifically, Performance Health's false designations of origin include:

   a. Using the COMFORT COOL® trademark in website search functionality to return results that display both genuine NCM Comfort Cool® products and non-NCM competing products together, without clear differentiation, creating the false impression that all products shown are manufactured by NCM in advertisements broadcast or published to the general public;

   b. Displaying Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in connection with competing products in search results, creating the false impression that the competing products are part of the Comfort Cool®

product line and are manufactured by NCM in advertisements broadcast or published to the general public;

c. Using legacy Comfort Cool® item numbers in connection with Performance Health's competing products in advertisements broadcast or published to the general public;

d. Creating a dual-listing scheme with a de-branded product (item #081235050) and a branded product (item #7034888) to capture orders and misappropriate NCM's brand equity in advertisements broadcast or published to the general public; and

e. Publishing customer reviews written for genuine Comfort Cool® products on pages advertising Performance Health's competing products.

70. Purchasers who search for "Comfort Cool" on Performance Health's website and are presented with a mixed display of genuine Comfort Cool® products and non-NCM competing products are likely to believe that all products displayed are genuine NCM Comfort Cool® products in advertisements.

71. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalogs in advertisements.

72. Performance Health's false designations of origin, disseminated through its advertising, promotional activities, and website search functionality, have been willful.

73. As a direct and proximate result of Performance Health's false designations of origin, NCM has suffered and continues to suffer irreparable injury.

74. NCM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and monetary relief pursuant to 15 U.S.C. § 1117.

**COUNT IV**
**False Advertising Under 15 U.S.C. § 1125(a)(1)(B)**

75. Plaintiff incorporates by reference and realleges paragraphs 1 through 74 as if fully set forth herein.

76. Performance Health has made, and continues to make, in interstate commerce, in commercial advertising and promotion, false or misleading descriptions and representations of fact regarding the nature, characteristics, qualities, and commercial reputation of Performance Health's products.

77. Specifically, Performance Health's false advertising includes:

   a. Displaying genuine Comfort Cool® products and non-NCM competing products together in search results for "Comfort Cool" without clear differentiation, falsely representing that all products displayed are NCM-manufactured Comfort Cool® products in advertisements broadcast or published to the general public;

   b. Displaying Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine

Comfort Cool® products in connection with competing products in search results, creating the false impression that the competing products are part of the Comfort Cool® product line and are manufactured by NCM in advertisements broadcast or published to the general public;

c. Publishing customer reviews written for genuine Comfort Cool® products on the product pages advertising Performance Health's competing products, including the de-branded "Thumb CMC Restriction Splint - CMC Brace" (item #081235050), falsely representing that the reviews describe the competing products; and

d. Displaying NCM's Copyrighted Photographs on product pages for Performance Health's competing products, falsely representing that the photographs depict the competing products in advertisements broadcast or published to the general public.

78. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalog advertisements broadcast or published to the general public.

79. Performance Health's false advertising has been published and disseminated in interstate commerce through Performance Health's website, catalogs, GPO contract pricing files, and other advertising and promotional channels accessible to purchasers throughout the United States.

80. Performance Health's false advertising is likely to influence purchasing decisions by healthcare facilities and other purchasers who are searching for Comfort Cool® products and are deceived into purchasing competing products that they believe are genuine NCM products.

81. NCM has been and is likely to be injured by Performance Health's false advertising through diversion of sales, damage to brand reputation, and loss of goodwill.

82. Performance Health's false advertising, published and disseminated through its advertising channels and website search functionality, has been willful.

83. NCM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and monetary relief pursuant to 15 U.S.C. § 1117.

**COUNT V**
**Misappropriation of Advertising Content**
**(Illinois Common Law)**

84. Plaintiff incorporates by reference and realleges paragraphs 1 through 83 as if fully set forth herein.

85. NCM has developed valuable advertising content in connection with its Comfort Cool® products, including customer reviews and testimonials that were generated through NCM's products and constitute NCM's advertising and promotional materials.

86. Performance Health has, through its advertising activities broadcast or published to the general public, misappropriated NCM's advertising content by publishing and displaying customer reviews written for NCM's Comfort Cool® products on product pages advertising Performance Health's competing products, including the de-branded "Thumb CMC Restriction Splint - CMC Brace" (item #081235050).

87. Performance Health's publication of NCM's advertising content in connection with Performance Health's competing products constitutes misappropriation of advertising ideas and content in advertisements.

88. Performance Health's misappropriation was conducted for commercial advantage and through Performance Health's advertising and promotional channels.

89. As a direct and proximate result of Performance Health's misappropriation of NCM's advertising content, NCM has suffered damages including lost sales, loss of goodwill, and damage to the value of NCM's advertising materials.

### COUNT VI
### Tortious Interference with Prospective Economic Advantage
### (Illinois Common Law)

90. Plaintiff incorporates by reference and realleges paragraphs 1 through 89 as if fully set forth herein.

91. NCM has a reasonable expectation of entering into valid business relationships with hospitals, healthcare facilities, and other purchasers who intend to purchase genuine Comfort Cool® products.

92. Performance Health knew or should have known of NCM's reasonable expectation of these business relationships.

93. Performance Health has, through its advertising broadcast or published to the general public, promotional activities, and website search functionality, intentionally and unjustifiably interfered with NCM's prospective business relationships by:

   a. Using the COMFORT COOL® trademark in website search functionality to display both genuine Comfort Cool® products and non-NCM competing products together, without clear differentiation, thereby diverting purchasers who intended to buy genuine Comfort Cool® products to competing products in advertisements;

   b. Displaying Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in connection with competing products in search results, creating the false impression that the competing products are part of the Comfort Cool® product line and are manufactured by NCM;

   c. Advertising competing products under legacy Comfort Cool® item numbers; and

   d. Creating a dual-listing scheme with separate item numbers for de-branded (item #081235050) and branded (item #7034888) versions of the same product to capture orders intended for genuine Comfort Cool® products.

94. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalogs.

95. Performance Health's interference was accomplished through its advertising activities, website search functionality, copyright infringement, trademark infringement, false advertising, and misappropriation of advertising content.

96. As a direct and proximate result of Performance Health's tortious interference, NCM has suffered damages including lost sales, lost profits, and damage to business relationships and goodwill.

**COUNT VII**
**Unfair Competition and Deceptive Trade Practices**
**(Illinois Common Law and 815 ILCS 510/2)**

97. Plaintiff incorporates by reference and realleges paragraphs 1 through 96 as if fully set forth herein.

98. Performance Health's advertising, promotional conduct, and website search functionality, including its use of the COMFORT COOL® trademark to display both genuine and non-genuine products together in search results, its display of Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in connection with competing products in search results, its item number advertising practices, its dual-listing scheme, and its misappropriation and publication of NCM's advertising content constitutes unfair methods of competition and unfair or deceptive acts or practices in advertisements broadcast or published to the general public.

99. Performance Health's conduct in its advertisements constitutes deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, including:

a. Passing off goods as those of another (815 ILCS 510/2(a)(1));

b. Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods (815 ILCS 510/2(a)(2));

c. Causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with another (815 ILCS 510/2(a)(3));

d. Representing that goods have characteristics, uses, or benefits that they do not have (815 ILCS 510/2(a)(5));

e. Representing that goods are of a particular standard, quality, or grade when they are of another (815 ILCS 510/2(a)(7)); and

f. Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding (815 ILCS 510/2(a)(12)).

100.    Performance Health's deceptive practices were willful.

101.    NCM is entitled to injunctive relief and, because Performance Health's conduct was willful, to attorneys' fees pursuant to 815 ILCS 510/3.

**COUNT VIII**
**Common Law Trademark and Trade Dress Infringement and Passing Off**
**(Illinois Common Law)**

102.    Plaintiff incorporates by reference and realleges paragraphs 1 through 101 as if fully set forth herein.

103.    NCM has acquired common law trademark rights in the COMFORT COOL® mark and trade dress rights in its products through its continuous and exclusive use of the mark in commerce for decades.

104.    Performance Health's conduct constitutes common law trademark infringement, trade dress infringement, and passing off by:

a.  Using the COMFORT COOL® trademark in website search functionality to display both genuine Comfort Cool® products and non-NCM competing products together, creating the false impression that all products displayed are NCM-manufactured in advertisements broadcast or published to the general public;

b.  Displaying Copyrighted Photographs and substantially similar versions of the Copyrighted Photographs depicting products that appear identical or similar to genuine Comfort Cool® products in connection with competing products in search results, creating the false impression that the competing products are part of the Comfort Cool® product line and are manufactured by NCM advertisements broadcast or published to the general public;

c.  Displaying the trade dress of NCM products in photographs in advertisements broadcast or published to the general public;

d.  Advertising and marketing products under designations and commercial identifiers, akin to slogans that have acquired secondary meaning, which cause purchasers to believe they are purchasing genuine Comfort Cool® products manufactured by or authorized by NCM; and

e. Creating duplicate product listings with de-branded products (item #081235050) designed to capture orders intended for genuine Comfort Cool® products.

105. Upon information and belief, Performance Health is using the same tactics in its GPO contract catalogs.

106. As a direct and proximate result of Performance Health's common law trademark infringement and passing off, NCM has suffered damage including lost sales, lost profits, damage to goodwill, and damage to brand reputation.

107. NCM is entitled to injunctive relief, actual damages, and other appropriate relief under Illinois common law.

**COUNT IX**
**Unjust Enrichment**
**(Illinois Common Law)**

108. Plaintiff incorporates by reference and realleges paragraphs 1 through 107 as if fully set forth herein.

109. Performance Health has been unjustly enriched at NCM's expense by misappropriating, through its advertising, promotional activities, and website search functionality, NCM's copyrights, trademark rights, brand goodwill, advertising content, legacy commercial identifiers, and brand equity to market and sell Performance Health's competing products.

110.    Performance Health has retained benefits, including sales revenue, profits, and market position, which belong to NCM or should not be retained by Performance Health given its wrongful conduct.

111.    It would be inequitable and unjust for Performance Health to retain the benefits it has obtained through its unlawful conduct.

112.    NCM is entitled to restitution and disgorgement of Performance Health's unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff North Coast Medical, Inc. respectfully prays that this Court enter judgment in its favor and against Defendant Performance Health Supply, Inc., and award the following relief:

## A. Injunctive Relief

a. A permanent injunction enjoining Performance Health, its officers, directors, employees, agents, servants, representatives, attorneys, subsidiaries, affiliates, successors, assigns, and all persons acting in concert or participation with them or on their behalf, from:

   i.    Reproducing, distributing, publicly displaying, or preparing derivative works of NCM's Copyrighted Photographs or any substantially similar photographs, except in connection with genuine NCM Comfort Cool® products;

ii.    Using the COMFORT COOL® trademark, or any mark, name, designation, or identifier confusingly similar thereto, in website search functionality, advertising, or any other manner, to promote, display, or sell any products not manufactured by or for NCM or authorized by NCM;

iii.    Displaying genuine Comfort Cool® products and non-NCM competing products together in search results triggered by the COMFORT COOL® trademark or any variation thereof, without clear and prominent differentiation disclosing that certain products are not manufactured by NCM;

iv.    Displaying photographs of genuine Comfort Cool® products next to, alongside, or in connection with any products not manufactured by NCM, including in website search results;

v.    Configuring website search functionality to return non-NCM products in response to searches for "Comfort Cool" or any variation thereof;

vi.    Using any legacy item numbers historically associated with Comfort Cool® products (including but not limited to Item Nos. 92720501-92720506, 56097901-56097910, 55049401-55049408, and 7101329-7101334) in connection with any products other than genuine NCM Comfort Cool® products;

vii.    Marketing, advertising, distributing, offering for sale, or selling any products under legacy Comfort Cool® item numbers or other designations likely to cause confusion with NCM's Comfort Cool® products;

viii.    Maintaining dual product listings that strip NCM's COMFORT COOL®
trademark from certain products while retaining it on others, or otherwise creating
product listings designed to capture orders intended for genuine Comfort Cool®
products;

ix.    Displaying, using, or publishing customer reviews written for genuine NCM
Comfort Cool® products in connection with any products not manufactured by
NCM;

x.    Making any false or misleading statements or representations regarding the
source, origin, sponsorship, approval, affiliation, or characteristics of any products
in connection with NCM's trademarks, copyrights, or legacy item numbers;

xi.    Engaging in any other advertising, promotional, or website conduct that infringes
NCM's copyrights, infringes NCM's trademarks, or otherwise constitutes unfair
competition; and

xii.    Assisting, aiding, or abetting any other person or entity in engaging in any of the
foregoing activities.

**B. Corrective Orders**

b. An order requiring Performance Health to take immediate corrective action, including:

i.    Removing all reproductions of NCM's Copyrighted Photographs from
Performance Health's website, catalogs, advertising materials, promotional
materials, and search results in connection with any products other than genuine
NCM Comfort Cool® products;

ii.  Reconfiguring Performance Health's website search functionality to ensure that searches for "Comfort Cool" return only genuine NCM Comfort Cool® products and do not return or display non-NCM competing products;

iii.  Eliminating the dual-listing scheme by removing the de-branded "Thumb CMC Restriction Splint - CMC Brace" product listing (item #081235050) at https://www.performancehealth.com/thumb-cmc-restriction-splint and the de-branded "Wrist & Thumb CMC Restriction Splint" product listing (item #081048313) at https://www.performancehealth.com/wrist-thumb-cmc-restriction-splint;

iv.  Restoring legacy Comfort Cool® item numbers (92720501-92720506, 56097901-56097910, 55049401-55049408, 7101329-7101334, and all related item numbers) to genuine NCM Comfort Cool® products only;

v.  Assigning new, distinct item numbers to any Performance Health-branded products that compete with Comfort Cool® products;

vi.  Correcting all GPO contract catalog files, item masters, EDI mappings, and procurement crosswalks to ensure legacy Comfort Cool® item numbers map only to genuine, authorized Comfort Cool® products;

vii.  Removing all customer reviews written for genuine Comfort Cool® products from product pages for any non-NCM products;

viii. Restoring proper and complete COMFORT COOL® brand attribution, including the registered trademark symbol (®), across all websites, catalogs, marketing materials, and ordering systems; and

ix. Providing notice to GPO members and other purchasers of the corrective actions taken.

## C. Monetary Relief.

i. NCM's actual damages caused by Performance Health's copyright infringement, or, at NCM's election, statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2);

ii. An award of NCM's actual damages caused by Performance Health's trademark infringement and unfair competition in an amount to be determined at trial;

iii. An award of all profits earned by Performance Health as a result of its wrongful conduct, pursuant to 17 U.S.C. § 504(b) and 15 U.S.C. § 1117(a);

iv. An award of enhanced damages, up to three times actual damages, pursuant to 15 U.S.C. § 1117(a) and (b), for Performance Health's willful trademark infringement;

v. An award of punitive damages;

iv. Prejudgment and post-judgment interest at the maximum lawful rate;

## D. Costs and Attorneys' Fees

i.      An award of NCM's reasonable attorneys' fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a), as this is an exceptional case warranting such an award;

ii.     An award of NCM's costs of suit, including expert witness fees and other litigation expenses;

## E. Impoundment and Destruction

i.      An order pursuant to 17 U.S.C. § 503 for the impoundment during the pendency of this action, and destruction or other reasonable disposition upon final judgment, of all copies of NCM's Copyrighted Photographs and all materials used to reproduce the Copyrighted Photographs, in Performance Health's possession, custody, or control;

ii.     An order requiring Performance Health to deliver up for destruction all advertising and promotional materials in Performance Health's possession, custody, or control bearing the COMFORT COOL® mark, any confusingly similar designation, or any legacy Comfort Cool® item numbers, to the extent such materials are used in connection with non-NCM products;

## F. Additional Relief

i.      An order requiring Performance Health to file with this Court and serve on NCM, within thirty (30) days after entry of judgment, a written report under oath setting forth in detail the manner and form in which Performance Health has complied with the injunctive provisions of the judgment;

    ii.      An order requiring Performance Health to preserve all documents, communications, and records relating to its use of NCM's Copyrighted Photographs, the Comfort Cool® trademark, website search functionality, legacy item numbers, GPO contract mappings, product sourcing, customer reviews, and any relabeling or repackaging activities; and

    iii.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

Dated: February 19, 2026

                    Respectfully submitted,

                    /s/Bryan P. Sugar

                    Bryan P. Sugar
                    **LEWIS, BRISBOIS, BISGAARD & SMITH**
                    550 West Adams Street, Suite 300
                    Chicago, IL 60661
                    Telephone: 312-345-1718

                    ***Attorney for North Coast Medical, Inc.***